See also D.C., 99 F.Supp. 766.

**CRAWFORD et al. v. TEXAS CO.**

Civ. No. 3321.

United States District Court,
W. D. Louisiana, Opelousas Division.

July 25, 1953.

Lunn & Trichel, Shreveport, La., for plaintiffs.

Marion J. Epley, Jr., and D. Douglas Howard, New Orleans, La., for defendant.

DAWKINS, District Judge.

Both sides have moved for summary judgment in this case, based upon the pleadings, annexed documents, etc., now in the record, and there is apparently no dispute as to the facts but simply questions of law are involved. Counsel for defendant, in brief, has stated the facts substantially correctly. He quotes the pertinent parts of the original contract conveying the land to plaintiffs' ancestors in title and refers to two subsequent agreements dated, respectively, August 19, 1935 and June 1, 1945, marked, respectively, Exhibits D–2 and D–3, which, together with the original contract of October 26, 1925, are made part of the answer.

The material portions of the original deed (D–1) by which defendant conveyed the land, declared that it included "all of the surface of (not to include the mineral estate hereinafter referred to and excepted) in and to the following described property * * *" (description omitted). It was provided:

"It is expressly understood and agreed by the parties hereto that there is reserved and excepted from, and not included in, this sale or conveyance, the oil, gas, coal, sulphur and all other minerals of whatsoever character that may now be on, or that may hereafter be discovered on, in or under the aforesaid described tract of land, together with the rights and privileges of ingress and egress thereon, and the full right and privilege of grantor, its successors or assigns, to the use of so much of the surface of said land as may be necessary to build and erect thereon necessary works and appliances to facilitate the development, exploitation and operations for the removal of such minerals, including the right to dig and construct earthen storage on the surface of said land, and the right to lay and construct, operate and maintain all such pipe line or lines and telegraph and telephone lines as may be necessary or required in connection with said operations, or incidental thereto; said reservation is made for a period of twenty-five (25) years from the date hereof, and as much longer thereafter as oil, gas and other minerals, or any one of them is being produced from said land. Should the grantor, its successors or assigns, at any time hereafter, produce any of the above minerals in paying quantities it agrees to pay to the then owner of the surface of that portion of said land yielding such production, the following royalties thereon, which shall be so paid to and accepted by such surface owner as full and complete compensation for the use of such part of the surface of said land as may be required by said grantor, its successors or assigns, in the development of said land for said minerals, or any one of them, and procurement and transportation of the same therefrom, as well as in liquidation of all claims or demands for damages, or any other claims or demands whatsoever that may arise by

reason of any operations conducted upon said land by said grantor, to wit:

" * * * Royalty provisions omitted * * *

"The royalties herein specified shall be a covenant only between the owner of said minerals, when produced, and the then owner of the surface of that portion of said land from which said minerals are obtained, and shall thereafter extend to their heirs, legal representatives, successors and assigns, respectively.

"But it is understood and agreed that the grantor shall have the free use of oil, gas and water from said land for all purposes of development and such operations as it may elect and choose to conduct thereon. It is, moreover, further distinctly understood that such operations for the production of any of said minerals shall be wholly at the option of the grantor.

"The grantees and successors in title, in consideration of the royalties so to be allowed and paid in the event the grantor elects to avail itself of its option to so develop said premises, and as a further inducement to said grantees to make this conveyance, agree that their possession of the surface of said land shall extend to and include, for the benefit of grantor, its successors and assigns, the mineral estate herein reserved, and further agree to promptly notify grantor of any trespass upon said mineral estate and to, so far as possible, prevent any such trespass.

"It is further expressly understood and agreed that, were it not for the reservations and exceptions of said minerals aforesaid, and the right to explore and operate for, produce and market the same from said premises, as hereinbefore provided, and the obligation of the grantees to hold possession of said mineral estate for the grantor, as set forth, then this sale and conveyance would not have been made."

Exhibit D–2, executed on August 19, 1935, refers to the foregoing original deed and, so far as pertinent, provides:

"Whereas, said reservation of the oil, gas and other minerals underlying the tract of land hereinabove described in favor of The Texas Company, a Texas corporation, and now vested in The Texas Company, a Delaware corporation, is stated to be for the term of twenty-five (25) years and as much longer as oil, gas or other minerals are produced therefrom, and it being the desire of the said Ben L. Crawford at this time to reacknowledge the present ownership of said oil, gas and other minerals in and underlying the surface of the above described land, together with all rights of ingress and egress for all purposes of development, production and transportation of said minerals, as being fully vested in said The Texas Company, and to acknowledge the interruption of any prescription accruing or that might have accrued against said reservation of said minerals, to the same effect as though said mineral reservation had been made as of the date hereof:

"Now, Therefore, in consideration of the price and sum of *One Hundred & No/100* ($100.00) Dollars, cash in hand paid, receipt of which is hereby acknowledged, and the other and further considerations hereinafter stated, said Ben L. Crawford, husband of Minerva E. Crawford, acknowledging the sufficiency and adequacy of said consideration for the purposes hereof, does by these presents, for himself, his heirs and assigns, take notice of the reservation in said deed of date October 26, 1925, hereinbefore referred to and described, whereby The Texas Company reserved to itself, its successors and assigns, all of the oil, gas and other minerals therein and underlying the surface of said tract of land hereinabove described, and also the right of occupancy and possession of same for the drilling of wells, erection of structures, laying of pipe line or lines, storage tanks, reservoirs and other works thereon necessary and incidental for carrying on operations for the development and production of said minerals, or any of them, in and from said tract

of land now owned by the said Ben L. Crawford and described in said deed of date October 26, 1925, hereinabove referred to and described; and the said Ben L. Crawford does by these presents acknowledge the present ownership of said oil, gas and other minerals in and underlying the surface of said described land, together with all rights of ingress and egress for all purposes of development, production and transportation of said minerals, or any of them, as being fully vested at this date in The Texas Company, a corporation of the State of Delaware, to the same extent and as fully and completely as though said reservation of said minerals and mineral estate and rights thereunto appertaining had been made, executed and delivered as of this date.

"The said Ben L. Crawford does hereby further declare that this acknowledgment is made and executed in furtherance of his agreement with said The Texas Company for the purpose of granting anew said rights to said The Texas Company, its successors and assigns, and that this instrument shall act and is intended to operate as an interruption of any prescription that may have accrued, or that may be accruing, against said The Texas Company or against said reservation and exception of the minerals in and underlying the tract of land hereinabove described, and to grant anew the right to enter upon said land and develop the same for said minerals, oil and gas, or any of them, and to produce the same therefrom, together with all other rights incident thereto or thereunto appertaining, and to perpetuate and to continue all of the rights, privileges and estates granted to or reserved by · said The Texas Company in said deed of date October 26, 1925, hereinabove referred to and described; and to that end the said Ben L. Crawford does by these presents, and for the considerations herein referred to, which he now declares to be sufficient and adequate for the purposes hereof, grant, bargain, sell, assign, convey and deliver unto said The Texas Company, a corporation of the State of Delaware, its successors and assigns, all of said minerals, mineral estate, rights and privileges in and underlying the tract of land hereinabove described, reserved and excepted in said deed of date October 26, 1925, and declares all of such minerals, oil and gas, to be fully and completely vested in said The Texas Company, a corporation of the State of Delaware, for itself, its successors and assigns, to the same effect and purpose, and with the same benefits, rights and privileges accruing to said The Texas Company, as though said deed of date October 26, 1925, with reference to said mineral estate and mineral rights had been originally executed as of this date.

"As a further and additional consideration hereof, it is mutually covenanted and agreed by and between the parties hereto that the royalties agreed to be paid to the surface owner of the hereinabove described tract of land under the terms and conditions of said deed of date October 26, 1925, and hereunder, in the event of production of said minerals, or any of them, shall be the same royalties set out in said instrument of date October 26, 1925, to-wit: * * * (royalty provisions same as in original deed)".

D-3, executed on June 1, 1945, again recognized the original transfer of 1925 "subject to the reservations and exceptions for a period of twenty-five (25) years", and, so far as relevant, declared:

"Whereas, the said Mrs. Minerva E. Crawford and Virginia Crawford Thacker are the present owners of the tract of land hereinabove described subject to the reservation and exception of the oil, gas and other minerals underlying the same as set forth in said deed of the date October 26, 1925, as is more fully shown by reference to that certain judgment being No. 76566 of the First Docket Court within and for the Parish of Caddo, State of Louisiana, which is recorded in Conveyance Book 411 at page 810 of the

Conveyance Records of Caddo Parish, Louisiana, and

"Whereas, said reservation of the oil, gas and other minerals underlying the tract of land hereinabove described in favor of The Texas Company, a Texas corporation, and now vested in The Texas Company, a Delaware corporation, is stated to be for the term of 25 years and as much longer as oil, gas and other minerals are produced therefrom and which reservation was recognized and any and all prescription which *might have accrued thereunder was especially waived by instrument dated August 19, 1935, which is recorded in Volume 340 at page 147 of the Conveyance Records of Caddo Parish, Louisiana, which said agreement and acknowledgment is made a part hereof to all intents and purposes as though same was written herein in full*, and

"Whereas, it is the desire of the said Mrs. Minerva E. Crawford and Virginia Crawford Thacker *to recognize and reacknowledge the present ownership of the said oil and gas and other minerals in and underlying the surface of the hereinabove described land* together with all rights of ingress and egress for all purposes of production, development, and transportation of said minerals as being fully vested in said The Texas Company *and to acknowledge the interruption of any prescription accruing, or that might have accrued, against said reservation of said oil, gas and other minerals, and to grant, convey and deliver unto the said The Texas Company anew all the oil, gas and other minerals in and under the hereinabove described property for a period of five (5) years from and after October 26, 1945."* (Emphasis by the writer.)

The consideration was stated to be $100 "and other good and valuable considerations * * * hereby acknowledged", and further recited that the present plaintiffs "take note of the reservation in said deed of the date October 26, 1925 * * * (which) is further recognized, acknowledged and perpetuated by that certain instrument dated August 19, 1935 * * * and (plaintiffs) do by these presents acknowledge the present ownership * .* * as being fully vested at this date in the (defendant) to the same extent and as fully and completely as though said reservation * * * had been made, executed and delivered as of the date of this instrument." D–3 further provided as follows:

"The said Mrs. Minerva E. Crawford and Virginia Crawford Thacker do hereby further declare that this acknowledgment *is not only made and executed in furtherance of the hereinabove mentioned agreement* with The Texas Company *for the purpose of granting anew said rights to The Texas Company*, its successors and assigns, *but for the purpose of interrupting any prescription which might have accrued, or that may be accruing* * * * *subject to the reservation and provisions hereinafter contained* and in order to further carry out and effectuate the purposes and intent of this instrument, the said Mrs. Minerva E. Crawford and Virginia Crawford Thacker do by these presents *and for the consideration hereinabove referred to which they now declare to be sufficient and adequate for the purposes hereof grant, bargain, convey, sell, assign, and deliver unto* The Texas Company, its successors and assigns, as provided in deed dated October 26, 1925, hereinabove referred to and described, *all the oil, gas and other minerals, mineral estate,* rights and privileges in and underlying the following described property * * * (property description and royalty provisions again omitted as unnecessary)". (Emphasis by the writer.)

The plaintiffs contend that the original contract (D–1) was, in essence, a lease, in that it carried a fixed term and provided for the payment of royalties, even though otherwise it was in terms a reservation of the minerals, which, under the laws of Louisiana, does not require the vendor or owner to develop the property, as does a lease; and that when the primary period

of twenty-five years expired without paying production, by its very terms the lease or reservation lapsed and was terminated. On the other hand, defendant asserts that both the acknowledgments of 1935 and 1945 started periods of prescription running anew, each of which was good for ten years thereafter, without any production in paying quantities, since there was no provision in the original contract requiring it, and, as a result the right to develop will not expire until 1955, or ten years after the last acknowledgment in 1945. Thus, the total life of the reservation would be thirty years.

█ It is common knowledge in the oil and gas business, which are the principal minerals produced in Louisiana other than sulphur and salt, that until the final decision in Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207, retention of minerals were in terms similar to other contracts affecting lands or immovable property. However, following that decision, which was handed down in the early Twenties (in which case many leading lawyers of the State were arrayed on one side or the other), attempts were made to confect contracts which would give the retainer, or transferee of such mineral rights, longer life and more permanent rights. The original document in this case bears the ear-marks of that effort, by attempting to make the owner and possessor of the soil possess also, insofar as minerals were concerned, for the benefit of the vendor or retainer thereof. This, of course, could have no greater effect than an attempted conveyance or reservation of those minerals themselves forever. In fact, it seems to be conceded in the arguments on both sides that but for the execution of the documents D–2 and D–3 in 1935 and 1945, respectively, defendant's rights in the minerals would, in the absence of production in paying quantities, have been lost at the expiration of ten years from October 26, 1925, under the original contract, again ten years after August 19, 1935, and a like period after June 1, 1945. In other words, defendant's claim seems to rest entirely upon the contention that under the terms of D–3 "de-fendant had a *new* period of ten (10) years from June 1, 1945, in which to develop". However, plaintiffs argue and cite the Louisiana cases in support of the proposition that in all contracts of sale, reservation, or lease of mineral rights for a fixed period of time, with a customary provision for extension thereafter so long as production is had in paying quantities, there are necessarily two limitations upon the rights of the reserver, vendor of the fee, the purchaser of the minerals, and the lessee; first, the stipulated period without production, and second, the end of any such paying production without further efforts to continue, according to the terms of the particular instrument. They further assert, without relying upon the codal prescription of ten years (which, in proper cases, only needs to be pleaded, unless the owner of the debtor estate sits by and knowingly allows the holder of any such rights to exercise them after ten years, thus creating an estoppel), that this can apply only when the primary period has not expired; and that defendant has lost all of its rights by the failure to produce during this twenty-five years, which ended on October 26, 1950.

The solution of this problem would be easy if the primary term of twenty-five years and any renewal or acknowledgment which could be said to start the running of the codal prescription of ten years, had expired simultaneously without production. However, that primary term ended on October 26, 1950, and it therefore becomes necessary to determine the effect otherwise of broad language such as "renewal", "acknowledgment" and "interruption", in the light of a special provision in the instrument of 1945, which was not contained in that of 1935. This appears in the quotations above from D–3, which immediately precedes the recited consideration, reading:

"It is the desire of the plaintiffs to recognize and reacknowledge the present ownership of * * * minerals * * * as being fully vested in said The Texas Company and to acknowledge the interruption of prescription accruing, or that might have accrued, against said reservation * * * and

to grant, convey and deliver \* \* \* anew all the oil, gas and other minerals \* \* \* *for a period of five (5) years from and after October 26, 1945"*. (Emphasis by the writer.)

The question thus presented has to be determined according to well known rules of interpretation of contracts generally, as well as express codal provisions in Louisiana, i. e., specific provisions prevail over general terms; the Court should endeavor to ascertain the real intent and purpose of the parties; and the language used is to be construed more strongly against the author or person who wrote the instrument (in this instance, it does not appear to be disputed, was the defendant); and that the Court should endeavor to give full force and effect to all provisions of the contract. Louisiana Statutes Annotated Civil Code, Arts. 1945 to 1962, both inclusive. In the absence of any further provision, such acknowledgment or waiver of prescription as to a servitude would undoubtedly run for ten years from June 1, 1945, but where the term is expressly limited to "a period of five years from and after October 26, 1945", as in this case, to give it that meaning would be to ignore this stipulation and in effect eliminate it from the agreement entirely. If it is applied, then the rights of the defendant terminated on June 1, 1950, in the absence of production, which concededly has not been had. In fact, while there was some exploration during the early periods, the production was not in paying quantities, and it is admitted that plaintiffs have never received any royalties. By limiting the stipulated acknowledgment of ownership and interruption of prescription to the same period of five years, as is expressed in the conveyance, does not ignore them, but gives effect to all during that time only, and without doing violence to any.

Plaintiff, therefore, should have judgment declaring them the owners of all rights in and to the minerals under the lands involved in this case, and that all claims of defendant expired as of October 26, 1950.

Proper decree should be presented.